_____ FILED   _____ ENTERED
_____ LODGED  _____ RECEIVED

**United States District Court,**
Western District of Washington

SG   JUN 30 2015

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

15 CV-01069 RAJ

Lance P. McDermott
        Plaintiff, *Pro Se,*

vs.

Megan Brennan, Postmaster General,
U.S. Postal Service and
Myrna Umali, President, Greater Seattle
Area Local American Postal Workers
Union, ~~Tim~~ Norris  Alexis Velgado

        Defendants.

) Complaint of Civil 42 U.S.C. § 2000e
) and Constitutional Rights 42 U.S.C. §
) 1983 violations.
)
) Noted for Consideration on 24 July
) 2015
)

This action arises under Court's original jurisdiction under 28 U.S.C. § 1345 for Title VII civil rights violations, 42 U.S.C. § 2000e, age discrimination and retaliation creating a Hostile Work Environment with unsafe and unhealthy working conditions.  See  *Lane* v. *Peńa*, 518 U. S. 187 , The Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S. Code §633a(c), waives sovereign immunity for a claim brought by "[a]ny person aggrieved" by a §633a violation.

29 U.S.C. §§ 621, et seq., the Age Discrimination in Employment Act of 1967 (ADEA), *Ueon C. BAK, v. USPS*, No. 93-56249, (9th Cir. 7 April 1995). *Simonton v. Runyon*, 232 F.3d 33 (2d Cir. 2000).  In *Gomez-Perez v. Potter,* (No. 06-1321), 553 U.S. 474 (2008), 29 U. S. C. §633a(a), the Court *Held:* Section 633a(a) prohibits retaliation against a federal employee who complains of age discrimination and that a retaliation claim could be brought under 42 U. S. C. §1982.

With concurrent jurisdiction of 28 U.S. Code § 2671 against the Agency

Officials not acting within the scope of their authority (Handbook ELM 668.11, - "performed within the scope of their employment," 28 U.S.C. § 2679) and failure to perform non-discretionary duties, 28 U.S. Code § 2680.

Claims also arise under 28 U.S. Code § 2680(h) against the Agency's Investigative and Law Enforcement Officials for false imprisonment, false arrest, abuse of process and malicious prosecution. That violated my 42 U.S.C. § 1983 Constitutional Rights (28 U.S. Code § 2679(b)(2)(A) remedy) and 42 U.S. Code § 1981a (28 U.S. Code § 2679(b)(2)(B)) for the intentional discrimination causing irreparable harm to me and liability under 28 U.S. Code § 2674 and 39 U.S. Code § 409.

And, jointly arises against the Greater Seattle Area Local (GSAL) American Postal Workers Union (APWU) under the National Labor Relations for the failure of the Union to process my grievances or aid a Steward of the Union because of my protected activity of protesting the Union's Officers paying themselves "salaries" (self enrichment) from the Union Trust funds and making "sweetheart" deals with Management.

Section 717 of the Civil Rights Act of 1964, 42 U.S.C. 2000e-16 (Title VII), permits an aggrieved postal employees the right to file a civil action in a federal district court for a review. *Donald Francis MACKAY, Jr. v. USPS*, 607 F.Supp. 271 (1985).

1. The United States Postal Service ("Agency" "USPS" or "Postal Service") violated my civil and constitutional rights (liability 28 U.S.C. 2674) under the

Family Medical Leave Act ("FMLA" or "Act"), 29 U.S.C. § 2601 *et seq.*  29

U.S.C. § 2617, authorizes civil actions for violations of the FMLA.  Pursuant to §

825.400(a)(1) I did file a FMLA complaint with the a complaint with the U.S.

Department of Labor (DOL), Wage and Hour Division (WHD) and receive a right

to file a private lawsuit pursuant to section 107 of FMLA (exhibit A).  And,

Congress has waived the Agency's immunity, *Flamingo Industries Ltd v. USPS,*

366 F. 3d 789 (2004).


2.  The Postal Service violated the Fair Labor Standards Act (FLSA) by not

paying me for work 30 June, 1 July and 1 September 2013, - "Suffered or

Permitted" Title 29, Part 785, § 785.11.  See Handbook PO-702, Tort Claims,

4223.2 Negligence, 422.3 Liability, and 423 Scope of Employment.  A Tort may

be filed after exhaustion of administrative remedies, 28 U.S.C. §§ 1345, 1346, and

2875(a).  I filed an administrative complaint with the DOL WHD and received a

right file a private action (exhibit B).


3.  The Agency violated the EEOC's complaint processing rules (APA, ADRA

and FRCP) causing additional individual and possible class spin-off

(constitutional) claims 28 U.S.C. § 1345.  Agency NEEOISO Manager/Judicial

Officer "decision," 25 April 2013 (exhibit C), - "You dubiously contend that

NEEOISO does not have 'territorial jurisdiction' to investigate complaints arising in Seattle and that only the Office of Inspector General can investigate EEO complaints. ...you question the use of contractors to conduct investigations... The [FRCP] concerning the limits on discovery do not apply in the federal-sector EEO complaint process... Following the remand, you chose to file a civil action in U.S. District Court on this claim."

4.   The Greater Seattle Area Local (GSAL) American Postal Workers Union (APWU) in bad faith failed in its affirmative duty under NLRB Section 8(b)(1)(A) to fairly represent and in its Section 9(a) duty to assist and process my grievances (exhibit D), 29 U.S.C. § 411 – equal rights.  This is in retaliation for my protected activities complaining about the Union Officers' unlawful use of the Union Trust Funds to self-enrich themselves extra salaries (exhibit E) and by making "sweetheart deals" with Management that has also injured mine and other employee's employment opportunities and benefits.  See *Bowen v. USPS*, 459 U.S. 212, 220-22 (1983) and *Johnson v. USPS*, 756 F.2d 1461, 1465, 1467 (9th Cir.1985). (NLRA Section 301"hybrid" suits, Duty of Fair Representation, - Labor Law, ASPEN, 2007, pages 1062-63).

5.  With concurrent tort jurisdiction of 28 U.S. Code § 2671 against the Agency Officials not acting within the scope of their authority and failure to perform non-discretionary duties, 28 U.S. Code § 2680.  Claims also arise under 28 U.S. Code § 2680(h) against the Agency's Investigative and Law Enforcement Officials for false imprisonment, false arrest, abuse of process and malicious prosecution.  That violated my 42 U.S.C. § 1983 Constitutional Rights (28 U.S. Code § 679(b)(2)(A) remedy) and 42 U.S. Code § 1981a (28 U.S. Code § 2679(b)(2)(B)) for the intentional discrimination causing irreparable harm to me and liability under 28 U.S. Code § 2674 and 39 U.S. Code § 409.  Handbook PO-702, Federal Tort Claims Act (FTCA) 422.2 Negligence, - "(a) A duty recognized by law… (c) – "A legally defined casual connection between the conduct and the resulting injury or other damages…" 423, - "Scope of employment is defined as duties an employee is authorized to perform…"

a.  I charge Maintenance Manager Jim Norris in his personal capacity for violating  my 42 U.S.C. § 1983 Constitutional Rights (28 U.S. Code § 2679(b)(2)(A) remedy) and 42 U.S. Code § 1981a (28 U.S. Code § 2679(b)(2)(B)) for the intentional discrimination of the Enforced Leave for my FMLA protected disability (exhibit F).

b.  I charge Human Resources Manager Alexis Delgado in her personal capacity for violating my 42 U.S.C. § 1983 Constitutional Rights  and for no stopping the the intentional discrimination of the Enforced Leave or return to work right 42 U.S. Code § 1981a (exhibit G).

6.  I ask the court to take supplemental jurisdiction of my claims for violation of:

a.  The American's with Disability Act (ADA) which prohibits discrimination

against a "qualified individual with a disability," 42 U.S.C. 12112, "who can

perform their job with[out] reasonable accommodation, "42 U.S.C. 12111(8).   I

was approved on my hiring PS Form 2485 (in OPF along with my statement of

being a Desert Storm Veteran), Medical Examination & Assessment, 24 October

1996 (exhibit 74), by an Agency Doctor, page 6, - "X – No Medical Restriction:

Examinee is medically qualified to perform essential functions of the position

without accommodation." See *Buckingham v. USPS*, 998 F.2d 735 (9th Cir.1993), -

"disabled individual who can perform the essential function …" 998 F.2d at 741.

The Agency violated the ADA's reasonable accommodation by forcing a "Work

Restriction" on me, 29 CFR 1630.  *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th

Cir.1994), Rehabilitation Act.  29 U.S.C. § 794(a)(1) provides that rights and

remedies available under 42 U.S.C. § 2000e-16 are applicable to persons

complaining of employment discrimination under the Rehabilitation Act. *Boyd v.*

*USPS*, 752 F.2d 410, 412 (9th Cir.1985).

b.  Section 501 of the Rehabilitation Act of 1973, which requires federal

agencies to affirmatively act to employ disabled individuals. *See* 29 U.S.C. § 791.

*See also Williams v. Widnall,* 79 F.3d 1003, 1005 (10th Cir.1996); and *Wells v.*

*Shalala,* 228 F.3d 1137, 1142 (10th Cir.2000). *See* 29 C.F.R. § 1614.203(b).

Specifically, these regulations state that a federal "agency shall not discriminate

against a qualified individual with physical or mental handicaps." The

Rehabilitation Act section 504(a) (1), which allows private litigants to enforce

their rights under section 501 by bringing a lawsuit and employing the "remedies,

procedures, and rights set forth in" section 717 of the Civil Rights Act of 1964

(i.e., 42 U.S.C. § 2000e-16). *See* 29 U.S.C. § 794a(a) (1).  The procedural

requirements for a Title VII discrimination claim (e.g., 42 U.S.C. § 2000e-16) are

1   applicable to claims brought under section 501 of the Rehabilitation Act.

2   *Brezovski v. USPS,* 905 F.2d 334, 335 n. 2 (10th Cir.1990), 42 U.S.C. § 2000e-

3   16(c).

4        c. Given that Postal Service employees may raise whistleblower claims in

5   conjunction with an otherwise appealable action. *See Mack v. U.S. Postal Service,*

6   48 M.S.P.R. 617, 620 (1991).   Where the Board has found that Postal Service

7   appellants may raise a whistleblower defense pursuant to section 7701(c)(2)(B)

8   because "[b]y the plain terms of § 7701 all employees who have the right to appeal

9   must have the same rights."10 M.S.P.R. 45, 48 (1982).   *Butler v. U.S. Postal*

10  *Service,* 10 M.S.P.R. 45, 48 (1982).   The Board applied the standard of proof

11  generally applicable to affirmative defenses under section 7701(c)(2).

12      d. I also ask the Court's supplemental jurisdiction to consider if the Enforced

13  Leave for my FMLA Disability and denial of return-to-work right was in

14  accordance with 5 U.S.C. § 7701.  I believe that the Agency committed harmful

15  error and based its action on a prohibited personnel practice described in 5 U.S.C.

16  § 2302(b).   The Enforced Leave action was not in accordance with any law, rule

17  or regulation of the Agency.  And, it was in Reprisal for Release of Information.

18  USPS Handbook ELM 666.18, - "No one may take or fail to take a personnel

19  action, or threaten to do so, with respect to any employee or applicant for

20  employment because the employee or applicant discloses information that he or

21  she believes evidences:  A [criminal act] violation of any law, rule, or regulation,

22  or a gross waste of funds, gross mismanagement, an abuse of authority, or a

23  substantial and specific danger to public health or safety."

24

25      7. I believe the facts will establish a prima facie case demonstrated by a

preponderance of the evidence that the agency's actions were a pretext for

discrimination and retaliation. *Jackson v. U.S. Postal Service*, <u>79 M.S.P.R. 46</u>, 52-

53 (1998).

    a.  19 June 2012, FMLA protection was given for a bad back (exhibit H).

    b.  20 February 2013, FMLA protection was given for my genetic birth defect

- partial color blindness, that I had to take time off work and get a medical exam as

required by my employer (exhibit I).

    c.  30 May 2013, My FMLA serious medical condition – color blindness,

became a disability because I could not perform a major life activity – working

(exhibit F).

    d.  30 July 2013, FMLA protection was given for stress, hypertension, and

anxiety from a Hostile Work Environment (exhibit J).


Statement of Facts

21 July 2010, Union Steward Brenda Burke (disabled veteran and injured on-

the-job) filed a class grievance, MNT 49-10, about the "unbearable working

conditions in the Kent WA Priority Mail Annex (PMA) leased "temporary" facility

because it does not have the required HVAC system for the safety and health of

employees (Handbook RE-4, Standard Design).  Employees are suffering

(passing-out) in 85+ degree temperatures and being bitten by insects (number one

reportable injury).  Management agreed to install a HVAC system and then cancelled it because of the $100,000 cost in a leased building ($850,000 per year). When I as the new Union Steward inquired into the HVAC system (RFI 14 May 2012, No MNT 49-10 found)was told it was cancelled because the PMA was going to be moved into the larger SeaTac AMC facility, owned building (lower cost), that had a new HVAV system.  The Agency tore down the AMC building knowing leaving PMA employees suffering in an unsafe and unhealthy conditions (and increased public costs).

8 February 2011, Brenda was subjected to a National Reassessment Process (NRP) discharge because the District Assessment Team could not - "find productive work" within her medical restrictions.  I tried to defend Brenda Burke as a fellow Steward.  But, 10 February 2011, SMO Ken Dow filed a false Threat Report against Brenda and Postal Inspectors conducted a without-reasonable or probable cause investigation based on SMO Dow's lie.  The Inspectors lied in their report that - "McDermott said that Brenda said that she was going to get a gun."  10 March 2011, SMO Dow gave Brenda (SMO Dow discharge Brenda 8 February) a 14-day suspension based on his lies. (USPS SEC 2013 Report on Form 10-K, page 14, Note 6 – Contingent Liabilities, - "… [EEOC OFO] certified a class action, McConnell v. Donahoe (2006).  The class currently consists of all permanent rehabilitation employees … who were subjected to the [NRP]… The

long term portion of this liability was $923 million at June 30, 2013…")

26 April 2012, I asked for FMLA protection for my bad back (exhibit H).

Submitting a WH-381 from my doctor and clinic notes from my neurosurgeon. I

had to get that protection because I was the only MPE on day-shift since MPE

Nolan Parrish's retirement in November 2011 (6 months). SMO Ken Dow was

saving the heavy work for me to do aggravating my bad back and then denying me

leave because of "staffing." When I did use my FMLA leave SMO Dow would

dispose of one or more of the maintenance shop tools or equipment I used to do

my job and causing me more stress.

27 June 2012, SMO Dow asked me to work with a retired postal employee,

Charles Neumeister, given a contract to "upgrade" equipment. When I refused

because giving a contract to a retired federal employee violates 18 USC 207. I

told SMO Dow that. SMO Dow threaten me with discharge. I complied and did

the work. SMO Dow investigated and then gave me a letter of warning, 2 July

2012 (disciplined me). LOW, SMO Dow, 2 July 2012, - "…I said Charles

Nemiester was a federal employee it was illegal to have a contract, 'USC 18-

207.'…" LOW, SMO Dow, 23 July 2012, - "…I also interviewed you for failing

to follow my instructions and disobeying a direct order to work with Don Hamel

and Charley Numiester on June,27, 2012. …during the investigative interview you

gave no valid reason…" Also see Postmaster General/Judicial Officer "decision"

(exhibit C), 25 April 2013, - "….EEOC regulations do not provide for the consideration of criminal matters…"

13 June 2012, I received FMLA protection for my bad back.  I had to get protection because SMO Dow was saving heavy work for me to due by myself. MPE Nolan Parrish had retied in November 2011 and his position was never filled leaving me the only MPW (out of five) on day-shift.  However, every time I used my FMLA protected leave SMO Dow took away one of my tools, equipment or benefit – internet access.

30 July 2012, I reported a cracked motor mount that I could weld.  SMO Dow told me that I was not "qualified" to weld (I passed the KAS for welder).  SMO Dow had someone put a clamp on the cracked overhead (employees walking under) heavy (100 pounds) motor and cracked mount.  When it was not fixed I called OSHA, 3 August 2012.  6 August 2012, in response to the OSHA investigation SMO Dow blamed me, - "The employee did not tell the Ken Dow about the cracked motor mount…"

5 September 2012, Email SMO Dow to SMO Dow, - "…McDermott came into my office and gave me a 3971 requesting annual leave for 48 hours on it in the remarks area he wrote (hostile work environment…)…."

3 December 2012, I called MM Jim Norris reported a Hostile Work Environment (HWE) and fear of being terminated.  Workplace Harassment

Interview, McDermott, 3 December 2012, page 2, - "I am scared.  My blood pressure is up.  I cannot sleep at night due to the potential firing and the constant threat of failure to follow instruction."  The undated HWE investigation's findings found "the perception of a hostile work environment."   I dispute the reasons why.

9 January 2013, Email MMO Marzec to SMO Dow, - "Attached below is a good Investigative Interview for Attendance.  Edit it as needed and use it for Lance… Jim [Norris] pointed out that just because an employee glares at us is not grounds for discipline…"

24 January 2013, Request for 80 hours of leave 27 January – 9 February 2013, - "Hostile Work Environment – Stress."

4 February 2013, Email LR Dan Foster to MMO Allen, HR Delgado, Dr. Pichard, - "I read the IMIP [HWE] file.  Does McDermott have a history of such behavior… He is a troubled employee who feels harassed…"

Handbook ELM 665.3 (regulation) requires employee's Cooperation in Investigations, including Office of Inspector General investigations.  665.23, - "Employees acting in an official capacity must not directly or indirectly authorize, permit, or participate in any action, event, or course of conduct that subjects any person to discrimination…"  I was required to participate in the HWE investigation and mentioned that I was color blind and suffered numerous injuries for my "protected" activity.

6 February 2013, Letter of Demand, MMO Marzec, - "…You claimed to have an impairment that has to do with your back and another concerning your vision. …you are required to provide medical documentation from your health care provider to substantiate these claims…"  Violating the FMLA and the Disability Act.

7 February 2013, Email MMO Marzec, "… I asked Mr. McDermott about his reported physical and visual impairments in the IMIP conducted by Norm Allen. He said that his back condition was a documented FMLA condition… and I told him again that he needs to supply medical doc…"

13 February 2013, after taking leave and paying for an exam I provided the "required" medical documents to the OHS.  OHS forced an unwanted permanent work restriction "Has difficulty distinguishing certain colors and shades of color." Despite my October 1996 Medical Examination and Assessment in which I reported that I was color blind and was approved by an Agency Doctor to perform all my essential job functions.

20 February 2013, I was granted 16 hours of FMLA leave (110000402232) for my serious medication condition (color blindness) and reported "harassment or retaliatory actions by manager/supervisor" to the HRSSC FMLA Contractor (exhibit H).

21 February 2013, Email OHS Nurse Daniels to MM Norris, MMO Marzec, - "If

the employee is not able to perform the full duties of his position due to his back condition, recommend…"

19 March 2013, I refused to participate in a "Reasonable Accommodation" process for the reason given "You fired Brenda Burke on light duty.  I don't want to be on light duty."

29 March 2013, I went to my Medical Provider for anxiety and hypertension (Assessment Plan with Psychology visits)).  Because I was being denied leave I asked for and received a "doctors' note for leave 1 April – 5 April 2013.

2 April – 4 April 2013, (while I was on stress leave) Maintenance Manager Jim Norris investigated my Official Personnel File (OPF), my Personal Medical File including the "doctor's assessment" and determined that I did not disclose that I was color blind (see Email 2 April 2013).  My Supervisor SMO Ken Dow tried to suspend me for taking the leave.  SMO Dow reported to the Postal Inspectors that I was "stealing postal property" back in Nov – Dec 2012.  (Emails 3-4 April)Then MMO Dave Marzec, SMO Dow, Inspector James Spratt, Inspector Michael Corf, Threat Assessment Team Leader Dr. David Picard (former contractor), Attorney Michael Tita, Inspector Michelle Brooks, and Inspector Casey Snyder conspired to violated my rights in unlawfully conducting a "Threat" investigation for my use of a machete off postal property to cut black berries, before picking season, long the Green River during my off-duty lunch time.

8 April 2013, (worked Sunday 7 April) when I came back from Stress leave the Inspectors came in to the facility and demanded that I give them my machete.  I asked why and the Inspectors said that they did not need any written authority and reasonable or probable cause.   They encoded that they had "right" to search my car (not on Postal Property).  The leased facility has a public parking lot that is not posted with the required Poster 7 authority to search in (secure postal property).   I stated that they did not have a search warrant and that they were part of the harassment by the same criminally inclined governmental officials that they, Federal Law Enforcement Officers, were directly working for.   I even reported clear criminal acts of the same Management.  They said they would look into the harassment and criminal acts (never did).  I agreed to a search after the Inspectors agreed to return my property after work.  After searching my car they took a machete and pickaxe and left.

8 April 2013, After the Inspector left with my property and after that harassment SMO Dow (feeling safe) gave me a letter demanding that I "wholly voluntarily on your part" for reasonable accommodation or be given discipline – Enforced Leave.

15 April 2013, after complaining of FMLA violations to the local DOL I received a right-to-sue letter from DOL for the FMLA violations (exhibit A).

18 - 19 April 2013, Email MMO Marzec (exhibit F), - "He did not state that he

was colored blind or could not distinguish colors when he applied for work with the Postal Service."  SMO Dow, - "I did not realize that if an employee lies on his application and that once it was discovered that employee would be removed from the postal service and no benefits would be paid."

25 April 2013, I received a response from the Postmaster General, Judicial Officer, and NEEOCISO Executive Manager William Caldwell that I cannot "mix criminal actions" or "criminal matters" in my EEO Complaints (exhibit C).

8 May 2013, I was given another "notice" (exhibit I) giving me till 15 May to "completely voluntary" for a "reasonable accommodation" process or be given – unpaid Enforced Leave.   I was also given a work restriction - "You are hereby prohibited from working on any wiring and performing any duties that requires the ability to distinguish colored wiring."

10 May 2013, I sent the HRSSC FMLA Office a copy of the 8 May 2013 Enforced Leave notice.  I was granted FMLA protection for my "serious medical" condition that I might be placed on Enforced Leave for (exhibit I).

17 May 2013, the HRSSC FMLA Office informed the OHS Office that I needed Work Restrictions for an on-the-job injury.

23 May 2013, I used the FMLA leave.  28 May 2013, Email SMO Dow, - "On 5/26/2013 at 14:25 I reminded Lance McDermott that if he wanted paid leave for his call in on 5/23/2013 he needed to provide me with medical documentation.  He

said (it's FMLA) I said (I know it's FMLA if you want FMLA LWOP I can do that, if you want to be paid I need the documentation) he said (are you threatening me Ken). I did not respond to him I left the building to go home. If Mr. McDermott does not provide the documentation by 5/31/2013 I will do a pay adjustment and changing the FMLA sick leave to FMLA LWOP."

28 May 2013, I saw Dr. Seidemann for stress.

30 May 2013, I was placed on Enforced Leave (exhibit F), - "…due to your medical condition (color blindness)" and SMO Dow ripped up my request for PS Form 3971 FLMA Leave. And, SMO Dow changed my paid FMLA sick leave 23 May 2013 to LWOP - Leave Without Pay (stole my pay).

3 – 4 June 2013, SMO Dow, HR Judy Ngo, and HR Alicia Sanchez denied my on the job injury (Injured On Duty - IOD), FMLA, and OWCP claims (exhibit G).

4-6 June 2013, Maintenance Craft Director Wendy Angelini met with MMO Marzec, 4 June (exhibit F), - "Per our conversation today at 1:40pm I will discuss the issue of your pay status with Management. You requested to be in Annual Leave, FMLA, for 160hrs, for an On-the-job injury…" 6 June, - "I discussed your leave status with MMO Marzec…. However, he will not change it to FMLA. He states that 'since the postal service put you out on enforced leave and the reason for the enforced leave has nothing to do with the FMLA case on file. You cannot claim FMLA for this time off.' He went on to way, they (management ? Norris)

were not going to let him (you tell the postal service what kind of leave he (you) get to take.  Anyway, something else for your grievance for the postal service…"

20 June 2013, MM Norris sent me a Bid Job Change, - "Effective June 29th, 2013 your start time will change to 0500.  Your days off will remain the same."

26 June 2013, MMO Hoff, sent me a Maintenance Preferred Duty Assignment Selection Form.

Sunday, 30 June 2013 I returned to work (30 days of enforced leave that I thought was agreed to by the Maintenance Craft Director start time 5am), with no SMO Dow working on Sunday and worked all day no problem.  I did not get paid for working Sunday.

Monday, 1 July, SMO Dow called the Kent Police at 6am and tried to have me removed.  The Kent Police left after I showed that I had FMLA protection.  SMO Dow gave me a signed Leave Request PS Form 3971, "OID [Injury On Duty] FMLA Leave [110000495039] DOC REQ – Greater than 24 hours – illness or injury Occupational Condition New Injury."  SMO Dow then called the Postal Inspectors who detained, questioned, search my backpack, toolbox, locker and car. They took my keys, Employee Identification and told me not to come back.  The Inspectors told me they did not care if I had FMLA protection – "Management" wanted me removed.  I did not get paid for working Monday.

16 August 2013, Step 1 Grievance Summary, Reedy – "Pay employee

McDermott 16 hours of pay."

21August 2013, I called the HRSSC FMLA Office (contractor) about Return-To-Work (RTW) forms and received a DOL Form WH-380.  I called the District Occupational Health Services (OHS) and the Nurse sent me RTW forms SPO69A and SPO69B.  I had my Doctor, 28 August 2013, fill out the SPO-69A, SPO 69B, OWCP-5a, and CA 2a.

Sunday, I September 2013, I returned to work with a DOL CA 1 and the RTW forms the SPO-69A, SPO 69B, OWCP-5a, and CA 20.  The Sunday Mail Processing Supervisor, Tony Kirk, (the only supervisor in the facility) was told by SMO Dow (phone call) not to accept my RTW Forms and demand reasonable accommodation or light duty request.  When I refused Postal Inspectors were called.  The Inspectors would not accept my RTW forms and tossed me out of the building.  See SMO Dow false Threat (Police) Report dated 16 September 2013.  I did not get paid for Sunday.  See 11 October 2013, Step 2 Grievance Decision, MMO Marzec, - "… Management contends that given these circumstances, he should not be paid for his unauthorized presence in the building…"  I sent copies, certified, of my RTW documents to HR Manager Alexis Delgado.  I also contacted the District Nurse and the HRSSC FMLA contractor.   The OHS Nurse Daniels and the HRSSC FMLA Contractor both told me there was nothing they could do.

6 December 2013, the HRSSC FMLA 'reviewed" my FMLA.

27 December 2013, HRSSC FMLA sent me a letter, - "The documentation you have submitted has been added (as information) to your FMLA files at the HRSSC.  It is noted that this set of documents is address to your local Human Resources Manager and is in response to an issue being handled by your District…"

31 December 2013 – 8 January I made a telephone campaign to return to work and to get HR to accept my CA1 for Stress.

19January 2014, I sent the HRSSC FMLA a new DOL WH-380-E filled out by my Doctor for my color blindness 110000402232.

26 January 2014, the HRSSC FMLA contractor cancelled all my FLMA protection, 110000402232 (color blind), because "you have not work in the last 12 weeks."

3 February 2014 I saw Doctor Cherry about my stress and he prescribe Prozac.

10 February 2014, the HRSSC FMLA contractor cancelled all my FLMA protection, 11000534179 (stress), because "you have not work in the last 12 weeks."  The HRSSS FMLA Contractor changed my OPF with an "official" OPM certified PS Form 50 placing me on Leave Without Pay (LWOP), back-dated to 15 September 2013.  (Violation of the Privacy Act and OPM OPF regulations)

11 February 2013, HR Manager Delgado responded to my request to RTW, - "…Absent your participation, management cannot make a proper determination

and cannot return you to work…"

14 February 2014, I requested HR Manager Delgado to return me to work and fix my OPF.

3 March 2014, I requested Seattle HR, Western Area HRSSC, and USPS Records Office Washington D.C. to RTW and fix my OPF.

4 March 2014, I met with MMO Rick Sudduth (MMO Marzec & SMO Dow retired) and performed a color wire test to his satisfaction. I gave MMO Sudduth copies of my RTW documents given to me by Nurse Daniels, SPO 69A, SPO 69B dated 28 Aug 13, DOL Form WH-380-E (doctor signed) given to me by HRSSC FMLA dated 14 Aug 13 and a copy of my OPF's 18 October 1996 PS Form 2591Application for Employment (showing military service) and PS Form 2485 Medical Examination & Assessment (5. Eyes, e. Is color vision normal – NO. Page 6, 4, Risk Assessment, - "No Medical Risk/Restriction:  Examinee is medically qualified to perform essential functions of the position …" Agency Doctor finding).

6 March 2014 Manager Norris sent me a RTW letter with the work restriction (light duty for OID), - "… Rick presented you with various colors of wires and you successfully identified all of them… demonstrating your ability to distinguish between primary colors…. I further instruct that if you are required to do any electrical work which involves distinguishing shades of color, that you seek

confirmation of the colors ... Your safety record is commendable..." So after 9-months of Enforced Leave because I did not want to be on light duty (and fired like injured-on-the-job disabled and fellow veteran Brenda Burke).  I had the same work restriction given to me by the OHS Nurse 13 February 2013, MMO Marzec 8 May 2013 before the 30 May Enforced Leave for my FMLA injury-on-the-job protected "serious medical condition."  But since I was down 9-months of pay and the bills were causing me serious stress I reluctantly went back to work with light duty for my on-the-job injury.

6 August 2014, I asked for FMLA for my father's prostate cancer care. However, after having over 900 hours of saved leave taken from me and only 3 months of working I could not take the time off needed to help my dad causing me more stress

11 December 2014, HRSSC FMLA reinstated my other FMLA Protections after I submitted more documents.

5 January 2015, because of the continued HWE I requested OWCP Form CA-2 from my Supervisor Tomas Ruiz.  I also requested reinstatement of the FMLA protection for Stress Leave submitted a WH-380 filled out by my Doctor.

6 January 2015, DOL gave a right to sue letter (exhibit B) for the days I worked but not paid for 30 June, 1 July, and 1 September before being tossed out by Inspectors.

10 January 2015, I submitted an on-the-job injury packet with 24 exhibits including the original CA-1 that SMO Dow refused to take 1 September 2013.

23 January 2015, I also submitted a Reasonable Accommodation requesting – start time of 7am and not to work alone on Sundays and Mondays violating my work restriction –light duty of on-the-job injury. See DOL Form WH-380-E, 7 January letter from Doctor Cherry 23 January 2015.

20 February 2015, OWCP Claim Examiner Kenneth Heminger request for more information with 30 days to respond.

23 February 2015, MMO Hank Baumgartner, wanted to "talk" to me about my reasonable accommodation request and on-the-job injury.  He showed me that he had copies of everything.  I told him that he was not a District Reasonable Accommodation Committee (DRAC) Member or a DOL OWCP Claims Examiner and I did not want to discuss my FMLA protected disabilities with him (Privacy Act).

19 March 2015, after burning what little leave I had my father died.

29 May 2015, I saw Doctor Yan for Stress and to fill out a new FMLA form.

1 June 2015, Doctor Yan filled out a DOL Form WH-380-E and letter for accommodation for color blindness and stress.

22 June 2015, I submitted a DOL Form CA-2a, Notice of Recurrence, because after starting back to work March 2014 under great stress with the loss of 9-

months of pay and 6-months of leave I find myself suffering the same on-the-job injuries. Starting at an ungodly 5am start time for a day-shift position and working alone doing heavy work by myself in unsafe hot conditions suffering insect bites (dock doors wide open next to a swamp) in a facility that does not have the required HVAC system to keep it cool. Management is spending $100,000 on new automated truck dock plates and not $100,000 on a new HVAC system for the safety and health of employees (Handbook RE-4, Standard Design).

Consideration

1. When I was given "Enforced Leave" 30 May 2013 (exhibit F) for a FMLA protected "serious health condition" - 29 U.S.C. § 2601(b). SMO Dow tore up my FMLA Leave request (exhibit F), denied my FMLA right to return-to-work 1 July, 1 September and did not pay me for working my civil service job that was supposed to be protected, - 29 C.F.R. § 825.100.

The information on my 1996 New Hire Medical Exam clearly shows that the Agency knew that I was color blind and an Agency Doctor (certified) that I could perform my essential functions without accommodation. Handbook EL-312.574.2, - "When the appointing official determines that the applicant is medically suitable, with or without reasonable accommodation, the applicant is notified."

FMLA Section 105 prohibits the employer from interfering with or

discriminating against an employee who exercises their right under FMLA or ADA, 29 CFR 825.702.

By asking for medical documents for my FMLA condition violated, 29 U.S.C. § 2614(a)(1).

By asking for medical documents for my perceived disability violated, 42 U.S.C. 12112(b), - "Discrimination against a qualified individual on the basis of disability, includes ... (d)(1)...shall include medical examinations and inquires.... (4)(A) A covered entity shall not require a medical examination..."

Rule 403, evidence of the state of mind (fear of be fired) is admissible, *U.S. v. Brown,* 490 F.2d 758 (D.C. Cir. 1973) and showing a conspiracy (fear of) to discharge me - Rule 801(d)(2)(E), *U.S. v. Peralta,* 941 F.2d 1003 (9th Cir. 1991). 18 U.S.C. 241 makes it a crime to conspire to injure a person in the free exercise of constitutional rights.  18 U.S.C. 242 make it a crime to deprive a person of their civil rights, *U.S. v. City of Philadelphia,* 644 F.2d 187 (3rd Cir. 1980).  The Agency finding in a "Conflict" (HWE) Incident Report 3 December 2012, - "...thus creating an underling fear for the employee I reference to being terminated."

The Enforced Leave process and decision was a prohibited personnel practice (PPP) described in 5 U.S.C. § 2302(b).  Management knew that the Agency did not have a policy or regulation for Enforced Leave.  OPM has not approved a Personnel Action code for Enforced Leave to be used on the required PS Form 50 and the Agency's PS Form 3971, Request for Absence, does not have a Leave Type or Code for Enforced Leave.  No PS-50 or PS-3971 was created for the Enforced Leave and no letter, noticed, warning was placed in my eOPF showing that I was placed on Enforced Leave.  See 39 U.S.C. 1005(a)(1), Chapter 75 of

title 5, (4)(A)(i) 5 U.S.C. 7511(a) Adverse Actions. 5 U.S.C. 6338 & 6385,

Prohibition of coercion (taking leave 6384) and 6381 FMLA.  Chapter 75 –

Adverse Actions, 7512, - a suspension for more than 14 days.

   29 CFR § 1630.2 (r) *Direct Threat* means a significant risk of substantial

harm…"  See *Bates v. UPS Inc.,* 465 F.3d 1069 (9th Cir. 2006), "determine of

fitness requirements." & *Nelson v. Dept. of Emp. Sec.,* 655 P.2d 242 (Wash.

1982), discipline - "was not for misconduct."   The Inspector determined that I

was not a "threat."  I did not make a threat punishable under 18 U.S.C. 871(a) or

2385, - *Rankin v. McPherson,* 483 U.S. 378 (1987), - "…or, indeed, that could

properly be criminalized at all." *Alan Dunn v. USPS,* 868 F.2d 1278, (Federal Cir.

1989), MSPB No. BN07528810065, discharge, - "…legality of removing empty

soda cans from the trash for the purpose of recycling."   However, I was still

subjected to detention, investigation, search and removal trying to return to work

after my FMLA approved (Enforced) Leave by Federal Law Enforcement Officers.

   Regional Code of Washington (RCW) 9A.60.50 – Knowingly certifies falsely,

RCW 9A.71.010 – which could affected the course or outcome of the proceeding

whether a false statement is material shall be determined by the court as a matter

of law.)

   Material Fact - 7 June 2013, MM Jim Norris RFI Response (exhibit F), #2, -

"There is no policy for enforced leave."

   "Tangible interest" in employment is protected within the meaning of the due

process clause, *Hill v. Borough of Kutztown,* 455 F.3d 225 (3d. Cir. 2006).  The

Court stated the test for finding a deprivation of a "liberty" interest was the reason

had to be (1) false, (2) publicized, (3) stigmatizing, and (4) showing denial of

employment opportunities.

Handbook ELM 666.14 Improper Employment and Placement Practices, -
"Deceitfully or willfully obstructing or improving the prospects of any person
competing for a position by granting a preference or advantage not authorized by
law, rule, or regulation (including defining the scope or manner of competition or
the requirements for a position), or by influencing anyone to withdraw from
competition for a position, is prohibited."

The reason for Enforced Leave was false (no written policy), every employee
knew (Inspectors kick me out of the facility), stigmatizing to me (labeled with a
disability) and I was denied employment/promotion (EEO Complaints).  See
*Ensley-Ganies v. Runyon* [USPS], 100 F.3d 1220 (6th Cir. 1996), work-related
absences & anti-discrimination laws.

42 U.S. Code § 1981a - Damages in cases of intentional discrimination in
employment (a) Right of recovery, (1) Civil rights - In an action brought by a
complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42
U.S.C. 2000e–5, 2000e–16] against a respondent who engaged in unlawful
intentional discrimination (not an employment practice that is unlawful because of
its disparate impact) prohibited under section 703, 704, or 717 of the Act [42
U.S.C. 2000e–2, 2000e–3, 2000e–16], and provided that the complaining party
cannot recover under section 1981 of this title, the complaining party may recover
compensatory and punitive damages as allowed in subsection (b) of this section, in
addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964,
from the respondent.


2. In *Dumaguit v. Potter*, C-06-2042 JSW (2006) Judge Jeffery White found
that USPS District Human Resource EEO Investigator Gerald Dumaguit

repeatedly complained to Postal Management of the ongoing discrimination and harassment of Filipino EEO Investigation Employees. The Agency fired him and stripped him of his thirty-year retirement. The Agency contracted-out the former Agency Human Resource EEO Investigation Employees' (lost their jobs). Out of jurisdiction EEO Investigation contractors (retired federal employees violating 18 U.S.C. 207) with no oath authority work doing inherently governmental EEO Investigations work and creating hearsay used as evidence" against injured employees further violating their civil and constitutional rights.

Doctrine states that Constitutional Jurisdictional questions can be made before, during or after any penal process or tribunal. I clearly challenged the jurisdiction and authority of these Tribunals created by the Agency and inflicted on Employees without due process and appeal or review to a higher authority. Even if my Civil Rights causes of action fail I would have separate standing for review of the jurisdictional authority of Public Attorneys, Federal Law Enforcement Officers and Contractors in the numerous (EEOC, MSPB, FMLA, OWCP) administrative judicial processes that violating the FRCP (exhibit 32), other laws and Constitutional rules. I also challenge the jurisdiction of the Agency's penal Tribunals such as the Threat Assessment Team and the District Reasonable Accommodation Committee the Agency created process on Employees without their (or the Union's) consent (non-voluntary). See *Summer v. USPS.*, 899 F.2d 203, 209 (2d Cir. 1990) and *Zinermon v. Burch,* 494 U.S. (1990), cause of action under 42 U.S.C.A. 1983 because "the plaintiff's allegations, if true, would establish a violation of procedural due process principles." *Bivens v. Six*

*Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  See, *Rodolfo Velasquez, v. USPS.*, 29 F.3d 637 (9ᵗʰ Cir. 1994), citing *Pereira v. USPS.*, 964 F.2d 873, 875-76 (9th Cir.1992).

Under Washington Restatement (Second) of Torts, to show Negligence: (1) a duty owed, (2) a breach of that duty, and (3) injury caused by that breach, to establish a state law cause of action for negligence.  See *Davis v. USPS,* 142 F.3d 1334 (10ᵗʰ Cir. 1998), HWE to be abusive as a matter of law.

Washington State, RCW 10.31.100, - "A police officer having probable cause to believe … that a person has committed or is committing a misdemeanor or gross misdemeanor."  In Pre-*Bivens, Bell v. Hood,* 327 U.S. 678 (1946), the Court found that damages could be base in state law.  Inspector Michelle Brooks found that "There was no threat communicated by McDermott with the machete, he was only carrying it from his car to the green belt along the property…" - 4 April 2013 (Exhibit 35), between the Inspector and my Supervisor Ken Dow - while I was on doctor approved stress leave,1-5 April 2013, from the Hostile Work Environment.


3.  In *Highway Truck Drivers and Helpers Local 107 v. Cohen*, 182 F.Supp. 608 (E.D.Pa. 1960), affirmed, 284 F.2d 162 (3d Cir. 1960), denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961), a suit was brought under the recently enacted Labor Management Reporting and Disclosure Act (LMRDA) of 1959, Public Law 860257, 29 U.S.C.A. 401 et seq.  The Court found that the LMRDA established a fiduciary responsibility on the part of officers of a labor organization, 501(a) and further provided for a right to sue, 501(b).  The Plaintiff, *Cohen,* charged the Union Officials with a continuing mass conspiracy to cheat and defraud the Union of large sums of money.  The Court found that the expenditures by the Defendants

1   violated the provision in 501(a) which imposes upon them a strict duty to -

2   "expand [union funds] in accordance with its constitution and bylaws and any

3   resolutions of the governing bodies adopted thereunder ***.

4   LMRDA §101(a)(5)(C), 29 U.S.C. § 411, *Breininger v. Sheet Metal Workers'*

5   *Local Union No. 6*, 493 U.S. 67 (1989), - "ad hoc retaliation by individual union

6   officers." The Union retaliated against me by holding-up grievances, denying me

7   my Steward position that I held for over 15-years and told me to "turn in my

8   Union Hall Key" telling me I cannot use the copier for my numerous Hostile Work

9   Environment, EEO, MSPB and NLRB complaints. In a deliberate attempt to

10   suppress dissent, *Schonfeld v. Penza,* 477 F.2d 899 (2d Cir. 1973) and deny me the

11   same rights given to other members, *APWU Headquarters Local 6885 v. APWU*,

12   665 F.2d 1096 (D.C. Cir. 1981)

13   I filed an NLRB complaint that the U.S. Postal Service violated Section 8(a)(2)

14   and Section 7 rights of Employees by unlawfully dominating the Union by paying

15   the salaries of Union Officers (for not working) for Union activities. This I

16   believe violates the NLRA § 8(a)(2), LMRA § 302, and LMRDA §§ 101, 102,

17   202, 203, 501 and 609. The dominating Management and the overpaid Union

18   Officials have failed to bargain over working conditions within the meaning of

19   Section 2(5) and making bad faith "sweetheart" deals (contracting, facility closers,

20   loss of jobs) with the Union violating Sections 8(a)(3) and 8(b)(3) showing an

21   anti-union motivate inherently destructive of the Labor/Management relationships.

22   *International Paper Co. v. NLRB*, 115 F.3d 1045 (D.C. Cir. 1997).

23   AFL-CIO Ethical Practices Code, Health and Welfare Funds, - "1 - No union

24   official ... shall receive fees or salaries of any kind ... should be regarded as one

25   of the functions expected to be performed by him in the normal course of his

duties and not as an extra function requiring further compensation …"  Minimum
Accounting & Financial Controls, - "D.  Salaries of elected officials should be
established only by constitutional provisions…"  Constitution of the American
Postal Workers Union (APWU), Article 7, only authorizes National Officers to be
paid salaries from Union Trust Funds, not Local Officers.    The Washington
APWU pays its Officers $21,850 a year and the Greater Seattle Area Local
(GSAL) APWU paid its Officers $145,000 a year from the Union Trust Funds and
are planning to change the Constitution so that they can still collect the extra
money when they retire.  Even if they did the required Constitutional Amendment
voted on by all the union members it would not be legal.   However, Union
Officials pack meeting with their friends using the meetings' simple majority to
vote Trust Funds payments to Union Officers and now Retirees.  I wrote the AFL-
CIO Ethical Practices Committee, about the theft of the Union Trust funds and it
was returned un-opened.

  LMRDA §101(a)(5)(C), 29 U.S.C. § 411, *Breininger v. Sheet Metal Workers'*
*Local Union No. 6*, 493 U.S. 67 (1989), - "ad hoc retaliation by individual union
officers."  The Union has retaliated against me by holding-up grievances, denying
me my Steward position that I held for over 15-years and told me to "turn in my
Union Hall Key" telling me I cannot use the copier for my numerous Hostile Work
Environment, EEO, MSPB and NLRB complaints.   In a deliberate attempt to
suppress dissent, *Schonfeld v. Penza,* 477 F.2d 899 (2d Cir. 1973) and deny me the
same rights given to other members, *APWU Headquarters Local 6885 v. APWU*,
665 F.2d 1096 (D.C. Cir. 1981)

  The APWU Union failed to process my grievances or to assist me.  *American*
*Federation of Government Employees v. Acree*, 475 F.2d 1289 (D.C.1973).  See

*Mathews v. Eldridge,* 424 U.S. 319, 300-32 (1976), the Court found, - "Eldridge's constitutional challenge is entirely collateral to his substantive claim of entitlement."

In *Salzandler v. Caputo*, 316 F.2d 445 (2d Cir. 1963) *Salzhandler*, a member of Local 442, Brotherhood of Painters, brought suit in district court after accusing the Local President of a crime of larceny and that union officials used their, - "disciplinary powers to silence criticism and punish those who dare to question and complain." The Court quoting §§ 101(a)(2) and (2), 102 and 609 of the LMRDA as designed to, - "protect the rights of union members to discuss freely and criticize the management of their union and the conduct of their officers. ...and towards that end the discussion should be free and untrammeled and the reprisals within the union for the expression of views should be prohibited."

In *International Paper Co. v. NLRB,* 115 F.3d 1045 (D.C. 1997), the Court held that the employer's permanent subcontracting of work was "inherently destructive" when "the employer treated employees within a bargaining unit differently depending on the degree of their union activity" showing proof of antiunion animus. Id. 1050, citing *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693 (1983). The APWU has made sweetheart deals allowing Management to contract out work, abolish jobs, discharge (enforced leave) disabled and injured-on-the-job employees without due process. "Consolidation" has created more work in the facility yet my Tour II day shift has been cut from 5 employees to 2 forcing me to work alone on Sundays and Mondays. Because of my disability/birth defect – color blindness – I have been given a work restriction not to work on colored electrical wiring. So two days a week I cannot do my job or take leave with no one to cover. Without the tools and equipment needed (taken away) making my

1   job even harder in an unbearably hot/cold federal facility without the required

2   HVAC.  And, I have suffered and still suffer from the discrimination and

3   retaliation injuries by My Union and My Employer for my protected activities

4   reporting their unlawful fraud, waste, abuse, and criminal behavior as required by

5   Law.

6

7      4.  I have protested and other (grievances, exhibit E) employees (class) the

8   unsafe and unhealthy working conditions:

9         (a) USPS Handbook AS-503, Standard Design Criteria, 4-2 HVAC, 4-

10  2.15.3, - "Indoor Air Quality Standards These standards encompass control

11  technologies that provide for the **health and safety** of building occupants…"

12        (b) USPS Handbook RE-5, Building and Site Security Requirements,

13  Purpose, 1-1.1, - "The standards in this handbook are intended to ensure a **safe**

14  **and secure environment** for Postal Service employees…"

15        © 39 U.S. Code § 409(f)(1) Each building constructed or altered by the

16  Postal Service shall be constructed or altered, to the maximum extent feasible as

17  determined by the Postal Service, in compliance with 1 of the nationally

18  recognized model building codes and with other applicable nationally recognized

19  codes.

20        "Workers' legitimate concerted activities," - *NLRB v. Washington Alum Co.,*

21  370 U.S. 9 (1962).  See *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993) -

22  "a crusade to terminate him." "… For the trier of fact to infer the ultimate fact of

23  discrimination from the falsity of the employer's explanation."- *Reeves v.*

24  *Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000).  "A jury should decide,"

25  *Taylor v. Runyon* [USPS], 175 F.3d 861 (11th Cir. 1999).

5.  I have reported Criminal Acts – Agency "Judicial" Decision, 25 April 2013 (exhibit C), - "The Office of the Postmaster General has asked me to respond to your misguided April 6, 2013, filing with the Postal Service's Judicial Officer. … You also appear to believe that you can mix 'criminal actions' … EEOC regulations do not provide for the consideration of criminal matters…   Follow the remand, you chose to file a civil action…"

The Agency's Postmaster General and Judicial Officer know that the Nation EEO Investigation Services Office (NEEOISO) Executive Manager, William Caldwell is giving out the possibly criminal (18 U.S.C. 207) contracts to retired Postal Employees who without jurisdiction or proper authority are violating the constitutional rights of Civil Service Employees.   After filing my complaint, April 2013, that included criminal claims I was subjected to more retaliation – Enforced Leave, May 2013, by the very same Federal Officials I was alleging to have committed criminal acts against me.  I was again injured.

Constitution Article IV, section 3, clause 2, vests in Congress the power to "dispose of" and make "all needful rules" regarding federal property.  My individual and Class claims are arguably within the zone of interest protected by federal statute and the requirements of Article III remain:  "the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants" with a "fairly traceable" causal connection between the claimed injury and the challenged conduct. – *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26 (1976) (Constitutional Law, WEST (1991) pages 75-77.)  In *Nebbia v. New York,* 281 U.S. 502 (1934), the Court stated that the Court's function – "is to determine in each case whether

circumstances vindicate the challenged regulation as a reasonable exertion of governmental regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discrimination."

My individual and class claims that the closure and destruction of the SeaTac Post Office and Air Mail Center Facility (owned Public Property) was unlawful because it was not excess to the needs of the Postal Service (or Public) since the Agency is leasing other facilities at a greater cost to the Public (Taxpayer suit) paying the higher costs of leasing (a facility without HVAC) and the added equity of the Public Property (access) lost creating a – Public Nuisance.

Public Policy Exception – The Court in *Hanson v. America Online, Inc.*, 96 P.3d 950 (Utah 2004), outlined categories of public policies eligible for consideration: (1) refusing to commit an illegal or wrongful act. – I was forced to work with (criminal) Contractor under threat of discharge and given a Letter of Warning (discipline) for protesting a criminal act. I suffered other adverse actions by the Agency Official(s) involved in the criminal acts and who created the HWE. *Hanson*, Justice Nehring, - "The Public Policy exception may be invoked only sparingly in circumstances where the cause of the employee's discharge implicates a public policy of such clarity and substance to impose on the employer a legal duty... to be free from discharge for exercising statutory rights," – *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir. 1979). I did report criminal acts to the Agency, *Fox v. MCI Communications*, 931 P.2d 857 (Utah 1997), - "discharge resulting from informing authorities will support an action for wrongful discharge."

Damages

Family and Medical Leave Act of 1993 (FMLA), Section 825.400(c), - "If an employer has violated one or more of FMLA... an employee may receive one or more ... any actual monetary loss ... An amount equaling the preceding sum may also be awarded as liquidated damages..."

42 U.S. Code § 12112 ©(4)(A) Prohibited examinations and inquiries – "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability..."

42 U.S. Code § 1981a - Damages in cases of intentional discrimination in employment (2) Disability - In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C. 2000e–5, 2000e–16] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117 (a)), and section 794a (a)(1) of title 29, respectively) against a respondent who engaged in unlawful intentional discrimination.

**Standard of Review**

By "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brewer v. USPS*, 647 F.2d 1093 (1981), (quoting *Consolidated Edison C. v. NLRB*, 305 U.S. 197 (1938), 5 U.S.C. 7703© (1988).

42 U.S.C. § 2000e-2. In order to establish a prima facie case of discrimination, a plaintiff must show (1) that he belongs to a protected class; (2) he was qualified; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. *See, e.g.,*

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). I belong to a protected class. I was qualified for the position without accommodation. No other employee has been subject to Enforced Leave for being Color Blind. I have "challenged" the Agency policies for violating mine and other employees Title VII rights. Showing a prima facie case of individual discrimination and injury with class disparate impact and treatment.

A plaintiff establishes a prima facie case of disparate impact by showing a significant disparate impact on a protected class caused by a specific, identified, employment practice or selection criterion, - *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1424 (9th Cir.1990). Under the disparate treatment theory an employer's intent or motive in adopting a challenged policy is an essential element of liability for a violation of Title VII, – *AFSCME v. Washington,* 770 F.2d 1401 (9th Cir. 1985).

USPS Poster, Workplace Harassment, - "Behavior that creates a sustained hostile or abusive work environment so severe or pervasive that it unreasonably interferes with or changes the conditions of one's employment."

USPS Law Department, Workplace Harassment – Frequently Asked Questions, page 2, - "A. The Supreme Court has ruled that whether a work environment is 'hostile' can be determined only by looking at all of the circumstances. ... 'It is enough ... if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay in her position.' - *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1463 (9thCir.1994)." "Demeaning" hostile work environment is "actionable," – *Womack v. Runyon* [USPS], 147 F.3d 1298 (11th Cir. 1998).

*Sumner v. USPS,* 899 F. 2d 203 (1990), – "There is simply no evidence to rebut

1  Sumner's claim that he was engaged in protected activity."

2

3  29 CFR § 825.400(c), - "If an employer has violated one or more provisions of

4  FMLA, and if justified by the facts of a particular case, an employee may receive

5  one or more of the following: wages, employment benefits, or other compensation

6  denied or lost to such employee by reason of the violation; or, where no such

7  tangible loss has occurred, such as when FMLA leave was unlawfully denied, any

8  actual monetary loss sustained by the employee as a direct result of the violation,

9  such as the cost of providing care, up to a sum equal to 26 weeks of wages for the

10  employee in a case involving leave to care for a covered service member or 12

11  weeks of wages for the employee in a case involving leave for any other FMLA

12  qualifying reason. In addition, the employee may be entitled to interest on such

13  sum, calculated at the prevailing rate. An amount equaling the preceding sums

14  may also be awarded as liquidated damages unless such amount is reduced by the

15  court because the violation was in good faith and the employer had reasonable

16  grounds for believing the employer had not violated the Act. When appropriate,

17  the employee may also obtain appropriate equitable relief, such as employment,

18  reinstatement and promotion. When the employer is found in violation, the

19  employee may recover a reasonable attorney's fee, reasonable expert witness fees,

20  and other costs of the action from the employer in addition to any judgment

21  awarded by the court."

22

23  Remedies

24  29 U.S.C. § 2615 makes it "unlawful for any employer to interfere with,

25  restrain, or deny the exercise of or the attempt to exercise, any right provided." 29

U.S.C. § 2615(a)(1). An employer who violates this section shall be "liable to any eligible employee affected" for compensatory damages and "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." *Id.* § 2617(a)(1). The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 88-90, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002).


1. I ask to be made whole from the Prohibited Personnel Practice – Enforced Leave, for my FMLA protected disability.

ELM 666.371 – "If the Administrative Law Judge finds that the Postal Service has established that it would have taken the same personnel action [Enforced Leave] in the absence of a disclosure [HWE investigation] under ELM 668.1, no corrective action will be ordered. 666.372 Where the Administrative Law Judge orders corrective action, such corrective action will place the complainant, as nearly as possible, in the position the individual would have been in had the improper personnel action not occurred."

2. I ask that my OPF, Medical Record and Law Enforcement Record be cleaned of any reference of the unlawful Enforced Leave.

3. I ask for the pay with interest for the three days that I did work and not get paid for.

4. I ask for monetary and other damages for irreparable harm of the

constitutional rights violations.

5. I ask for minimum damages against the GSAL APWU but:

a. Ask the Court to order the return of the Union Trust Funds unlawfully taken for self-enrichment of the Union Officials salaries.

b. Ask the Court to reverse the "sweetheart" staffing deals made between Management and the Union to pre-Hostile Work Environment levels.

c. I ask the Court to provide the temporary injunctive relief of not closing any Processing Facility until the Agency has provided Handbook PO-408 Area Mail Processing Plan showing the Agency complied with the Postal Accountability Act's cost-saving requirement and Public (paying the bill) input.

d. I ask the Court to provide the temporary injunctive relief of not closing Post Office or opening any Contract Post Office until the Agency has provided the required PO-101 Retail Optimization Plan process with Public input and Decision after.

6. I ask for Maintenance Manager Jim Norris in his personal capacity to pay damages.

7. I ask for HR Manager Alexis Delgado in her personal capacity to pay damages.

8. I ask the Court to consider class injunctive relief and order the Agency to install a HVAC system in the Kent, WA, PMA and award damages to the long suffering employees.

9. I ask the Court to consider class injunctive relief and order the closer of the National EEO Services Investigation Office (NEEOISO) and requiring trained Postal Service OIG Inspectors to conduct EEO or any administrative (APA) investigation.  (And, removing the OIG Inspector's self-appointed criminal law

enforcement powers.)

10.  I ask the Court to consider class injunctive relief and order the closer of the unlawful and unconstitutional tribunals - Reasonable Accommodation Committees and - Threat Assessment Teams.

11.  Since the Agency has refused to do so, I ask for the Court for what relief it can give for the fraud, waste, abuse of authority, and criminal acts involving millions of dollars of Public Funds.

Respectfully submitted this 30th of June 2015,

Lance McDermott
1819 So 104 ST
Seattle, WA  98168
206 763-6268